Parsons Behle & Latimer
Norman H. Kirshman, Bar No. 2733
Robert L. Rosenthal, Bar No. 6476
Shelley L. Lanzkowsky, Bar No. 9096
411 E. Bonneville Avenue, Suite 300
Las Vegas, NV 89101
Telephone: (702) 384-3877
Facsimile: (702) 384-7057

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LVRC HOLDINGS, LLC, a Nevada Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER BREKKA, an individual; CAROLYN QUAIN, an individual; EMPLOYEE BUSINESS SOLUTIONS, INC., a Nevada Corporation; EMPLOYEE BUSINESS SOLUTIONS, INC., a Florida corporation and DOES I through X, <br><br> Defendants. | Case No. CV-S-05-1026-KJD-GWF <br><br><br> **DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| CHRISTOPHER BREKKA, an individual, CAROLYN QUAIN, an individual, EMPLOYEE BUSINESS SOLUTIONS, INC., a Nevada Corporation, EMPLOYEE BUSINESS SOLUTIONS, INC., a Florida corporation, <br><br> Defendants/Third Party Complainants, <br><br> v. <br><br> STUART P. SMITH, an individual, <br><br> Third Party Defendant. | |

13944.001/879231.1

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

This lawsuit was filed August 22, 2005.  On September 6, 2005, Plaintiff LVRC Holdings, LLC ("LVRC") filed an "Ex Parte Motion Allowing Plaintiff To Copy And Secure Any Electronic Media In Defendants' Possession." (the Ex Parte Motion).  By "Amended Order" dated October 17, 2005, Plaintiff's Ex Parte Motion was granted; and at approximately 7:00 a.m., on October 19, 2005, an attorney and a consultant employed by Plaintiff, accompanied by two armed United States Marshals in possession of the "Amended Order", gained access to the residence of Defendants Brekka and Quain.  Thereupon, Plaintiff's Consultant took control of three computers in the residence, and made forensic copies of the three hard drives[1] which the Marshals took into their custody.

The Ex Parte Motion was supported solely by the following allegations of Plaintiff's attorneys and the Affidavit of Brad Greenstein.

a)     "In or around November, 2004 … Brekka used the administrative function in LVRC's computer system to access the system." (Ex Parte Motion, Page 3, lines 15 -19);

b)     "In November 2004 … Load employees actually caught Brekka/Quain in the LVRC account." (Ex Parte Motion, Page 3, line 27 – p.4, line 2);

c)     "On November 2004 employees of Load were using a program that allowed them to determine **who** was on the system at any time.  Brekka/Quain were actually caught in the LVRC account." (Emphasis added), (Affidavit of Brad Greenstein attached to the Ex Parte

---

[1] Defendants' attorneys were not notified when the Marshals gained entry to Defendants' home, and it was not until 4:40 p.m. on October 19, 2005, that Defendants' attorney was provided with a copy of the Ex Parte Order.  Norman H. Kirshman, Defendants' lead attorney was in Reno when the search was undertaken and learned of the search.  Accordingly, it was several hours before one of Defendants' attorneys arrived at the residence and tried to comfort Mr. Brekka and Ms. Quain, husband and wife, both of whom were extremely upset.

13944.001/879231.1                                              - 2 -

Motion, Paragraph 15 and 16).[2]

Defendants will establish beyond any doubt that the assertion made by Plaintiff's attorney in the Ex Parte Motion that Defendants Brekka/Quain were "actually caught in the LVRC account," repeated under oath by Brad Greenstein as personal knowledge – not information and belief, **were false**; and were either known or should have been known by Plaintiff's lead attorney and Mr. Greenstein, to be false when published and continue to be false. Plaintiffs cannot establish **who** used the administrative password to access Load's computers. Nick Jones, Load's president and manager, never attempted to trace the unauthorized access to its source. It is also undisputed that Mr. Brekka did not delete the e-mail he had previously saved on his LVRC computer when he left LVRC upon termination of his employment in mid-September 2003. Included in Mr. Brekka's saved e-mail was a message from Nick Jones to Mr. Brekka which contained the administrative username and password to access LVRC's account on Load's servers. It is unknown when that e-mail was deleted or how many people had access to the computer before the e-mail was deleted. Finally, there is no evidence that anyone using defendants' personal computers accessed Load's secure website on November 19, 2004. It follows that plaintiff cannot meet its burden to prove Mr. Brekka or Ms. Quain used the administrative username and password to access LVRC's account on Load's servers on November 19, 2004.

In addition, as the direct consequence of plaintiff's refusal to provide financial information and documents requested by Defendants during discovery, the parties entered into the attached Stipulation barring Plaintiff "from using any information derived from documents requested in Defendants' Request For Production of Documents to Plaintiff and Third Party Defendant, Request Nos. 11, 12, 15 and 16, dated May 3, 2006 and from using any such

---

[2] For the convenience of the Court, the Greenstein Affidavit is attached hereto.

13944.001/879231.1                                  - 3 -

documents as evidence or as a basis for expert opinions in the case." That stipulation gave plaintiff until July 17, 2006 to produce the requested documents or be barred from submitting evidence derived from such documents. On July 31, 2006, plaintiff submitted an expert report opining that LVRC's "loss" was $1,143,898.00. It is obvious plaintiff's expert arrived at that figure based upon information from documents LRVC had refused to produce; and it is therefore barred as evidence in this case.

## II.  STATEMENT OF UNDISPUTED FACTS[3]

**Background**

1.  Christopher Brekka and Carolyn Quain are husband wife. As is the case with all parties and most witnesses involved in this lawsuit, with the exception of Nick Jones of Load, they are recovering substance abuse addicts who met at or attended meetings of Narcotics Anonymous, ("NA") an organization modeled after Alcoholics Anonymous, ("AA").

2.  Stuart Smith, principal owner of LVRC, has known Ms. Quain for approximately 20 years. He has known Mr. Brekka for approximately 8 years. (TR Smith, 15:22-23; 16:9.)

3.  In or about 1999 Brekka established Employee Business Solutions, Inc. of Florida ("EBS –Fla"); and Employee Business Solutions, Inc. of Nevada ("EBS-Nev") in or about 2004. Brekka is the only employee of the EBS Companies and provides consulting services to companies including those operating residential treatment centers, including referrals, internet marketing, drug and alcohol testing policies and related services. (TR Brekka, 10:12 – 12:12; 14:21-25.)

4.  In or about April 2003, Brekka commenced employment with LVRC, following discussions with Stuart Smith, which contemplated an ownership interest for Brekka in a new for

---

[3] Reference to depositions are designated by the name of the deponent, page and line, i.e. TR Brekka, Page ___, Line(s) ___. (True and correct copies of all transcript and expert report citations are attached hereto as Exhibit A.)

13944.001/879231.1                                                      - 4 -

profit residential treatment center for drug addicted persons who had satisfactory financial resources or acceptable insurance coverage. (TR Brekka, 83:25 – 85:22.)

5. While employed by LVRC, Brekka, as well as other employees referred persons seeking assistance to other residential centers whose financial requirements were not as strict as LVRC. (TR Brekka, 90:17 – 92:14.)

6. Part of Brekka's responsibilities for LVRC were marketing and interaction with Load, a company utilized by LVRC to provide e-mail, web-site and related services. (TR Brekka, 93:24 – 94:12.)

**LVRC's Computer System**

7. On or about June 2, 2003, an "administrative function" was established with Load through Nick Jones, LVRC's primary contact at Load. Nick Jones informed Brekka, through an e-mail to Brekka's LVRC e-mail address, that the Administrative Function had been established. The e-mail included the "login" and "password". (TR Brekka, 95:2-14; Ex 10.)[4]

8. LVRC provided Brekka with a computer during his employment from April – September 2003. When Brekka left LVRC, the computer remained in his former office, which was assigned to Brad Greenstein. (TR Greenstein, 38:3-11.)

9. Brekka's LVRC computer was used after his departure from LVRC by several LVRC employees, identified generally by Brad Greenstein. (TR Greenstein, 32:10-33:11.)

10. During his employment with LVRC, Brekka saved all relevant and pertinent e-mails he received at his LVRC e-mail address. Included in his saved e-mail was the June 2, 2003 e-mail Nick Jones sent him with the login and password for the administrative function to access Load's website. Brekka did not delete, modify or do anything to change his saved e-mails or

---

[4] The e-mail containing the Administrative Function Loggin password was provided to Defendants' attorneys on or about June 23, 2006 by Plaintiff's attorney along with other documents from Plaintiff's files in conjunction with a supplemental response to outstanding discovery requests.

13944.001/879231.1                               - 5 -

other data on his LVRC computer upon his departure from LVRC or at any time thereafter. (Brekka Declaration ¶¶ 2-4.) (A true and correct copy of Chris Brekka's signed declaration is attached hereto as Exhibit B.)

11. On or about June 2, 2003, Brekka's LVRC e-mail account was activated. Until that time, Brekka had used his personal e-mail address. (*See id.* at ¶ 2.)

12. David Greetham, LVRC's computer forensics expert, recovered the June 2, 2003 e-mail from Jones to Brekka containing the username and password for the administrative function from the hard drive of Brekka's LVRC computer after it had been deleted. There is no evidence when that e-mail was deleted. (Supplemental Report of David Greetham, produced July 31, 2006.)

13. Any person who had access to Brekka's LVRC computer after Brekka left the employ of LVRC in September 2003, and before the June 2, 2003 e-mail was deleted, would have been able to view that e-mail. (TR Jones, 43:4-15.)

14. When Brekka and Smith could not agree on a contract to cover his employment and purchase of an interest in LVRC, Brekka's employment with LVRC terminated in or about mid-September 2003. (TR Brekka, 200:16 – 201:11.)

15. After Brekka's employment terminated and he left LVRC, Greenstein had approximately fifty (50) conversations with Nick Jones about LVRC's computer needs and Load's services. (TR Greenstein, 41:5-13.)

**The Investigation of the November 19, 2004 Access of Load's System**

16. On November 19, 2004, Jones observed someone had logged on to Load's system using the cbrekka@FountainRidge.com login. (TR Jones, 13:1-25.)

17. Load uses "Live Person" software that tracks users on its system. The software enables Load to identify past visitors to its website; and monitor clients that are logged on to the website. (TR Jones, 15:19 – 16:10.)

18. The "Load Program" referred to at Paragraph 17 of the Complaint, and the Ex Parte Motion did not have the capability of identifying the person or persons who used the Administrative Function login and password. (TR, Jones, 16:23-24; 20:8-10; 21:4-9; 22:3-8: 31:14 – 32:4.)

19. Jones identified the computer accessing Load's system with the cbrekka@FountainRidge.com login on November 19, 2004 by the IP address 199.107.156.30. (TR Jones, 38:21-23.)

20. The person accessing Load's secure computer system using LVRC's administrative function could not view LVRC's employees e-mail. (TR Jones, 29:20-22.)

21. An IP address is the internet address location from which the internet session is taking place. An IP address can be traced. The FBI can use an IP address to trace a spammer to a specific residence or a virus to a specific location. (TR Jones, 22:3-17.)

22. Jones identified the provider of the IP address used as CERTnet. He testified that CERTnet, as the provider of that IP address, would have a much greater likelihood of identifying where the IP address came from. Nobody at LRVC asked Jones to investigate the location of that IP address, and Jones ended his inquiry at that point. (TR Jones, 38:24 – 40:2.)

23. Greetham examined the hard drives of Brekka and Quain's three personal computers. (Greetham Report ¶ 3.17.) His report provide no evidence that one of Brekka and Quain's three personal computers was used to access Load's website using the administrative function on November 19, 2004.

24. Greetham's report does, however, contain the following opinion: "it is evident that unauthorised (sic) access to the LOAD system was obtained by the Brekka computers labeled DAG-001 & DAG-002 as recently as 9/2005." (Greetham Report § 4(c).) Greetham's opinion on this point is unequivocally wrong. It is undisputed that Brekka's old administrative function login and password were deactivated on November 19, 2004. (TR Jones, 40:3-18; Ex. B.)

25. Brekka testified under oath that at no time did he attempt to access LVRC's account on Load's computer system. (TR Brekka, 6:15-18.)

**LVRC's Damage Claims**

26. Defendants requested all LVRC's balance sheets, income statements, Federal Tax records for the years 2002-2005, and/or statements of cash flow LVRC intends to rely on in this matter. (*See* Def.'s Request for Prod. of Docs. to Pl. and Third Party Def. Nos. 11, 12, 15, and 16 dated May 3, 2006.) (A true and correct copy of defendants' requests for production are attached as Exhibit C.)

27. LVRC refused to produce any of the requested documents, and entered into a stipulation that it would have until July 17, 2006 to produce said documents, and if LVRC failed to do so by that date, plaintiff would be barred from basing a damage claim upon information derived from the documents and from using any such documents as evidence or as a basis for expert opinions. The Court approved the stipulation in an Order dated June 30, 2006. (A true and correct copy of the approved stipulation is attached as Exhibit D.)

28. Plaintiff did not produce the documents.

29. Plaintiff confirmed, in a formal meet and confer on July 20, 2006, that it would not be seeking damages based on the performance of LVRC after Brekka left. (TR July 20 Meet and Confer, 14:8-11.)

30. On July 31, 2006, Dr. Alan Goedde, plaintiff's damages expert, submitted a report placing plaintiff's damages at $1,143,898.00. (Goedde Report, ¶ 8.)

31. His report calculated that 100% of LVRC's marketing and advertising expenses were lost due to Brekka's actions. (*Id.* at ¶ 14; Schedules 2-3.)

32. He further found, "Based on my discussions with the company officers, it was estimated **that the effectiveness** of [all non-internet marketing and advertising] had been reduced by approximately 50% due to the actions of Mr. Brekka." (*Id.* at ¶ 16.)

33. Finally, Goedde calculated the amount LVRC lost due to the time its employees spent responding to this litigation. His calculation included that assumption that "Based on the size of the company, and annual salary of $200,000 per year [for Stuart Smith] appears reasonable." (*Id.* Schedule 4.)

34. On July 27, 2006, Smith stated, in writing under oath, that his objective in this suit is to "[r]eceive compensation for the damages suffered as a result of the unlawful activities…." (Statement of Stuart Smith dated July 27, 2006.)

## III.  ARGUMENT

A court must grant a motion for summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Foremost Ins. Co. v. Bowden*, 2:04-CV-174, 2006 WL 1966745, *2 (D.Nev. July 12, 2006). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial' and summary judgment is proper." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

### A.  **LVRC Has Not Presented Any Evidence To Identify Defendants As The Persons Who Accessed Its Load Account Using The Administrative Function On November 19, 2004.**

LVRC can offer no evidence that would allow a rational trier of fact to find that

13944.001/879231.1                                                         - 9 -

Defendants accessed LVRC's information on Load's computer system on November 19, 2004. A claim under the Computer Fraud and Abuse Act ("CCFA"), 18 U.S.C. § 1030(a)(4), requires a plaintiff to present evidence on four elements: (1) defendant has accessed a "protected computer;" (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and with "intent to defraud"; and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value."[5] *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3rd Cir. 2005) (quoting statute). Proving a violation of the CCFA requires a detailed examination of hard evidence, and, as a practical matter, proving civil liability under the CCFA will mirror the standard for proving criminal liability. *See id.* at 509. In *P.C. Yonkers,* it was uncontroverted that defendants had accessed plaintiffs' computer system after leaving plaintiffs' employment. *Id.* The Third Circuit, however, affirmed the district court's decision to deny plaintiffs' request that defendants be enjoined from using plaintiffs' trade secrets to operate competing stores because plaintiffs could not prove defendants had obtained anything of value through the unauthorized access. *Id.* Plaintiffs urged the court to draw inferences of intent and that the defendants obtained valuable information from the mere fact that unauthorized access had been shown. *Id.* The court rejected that invitation, holding, "the elements of the claims asserted are part of a *plaintiff's* burden. That information was taken does not flow logically from mere access." *Id.* (emphasis added). Similarly, in this case, plaintiff must prove that it was defendants who used LVRC's administrative function to access Load's computer system.

---

[5] Plaintiff also asserted a claim under the Stored Communications Act, 18 U.S.C. § 2701, *et seq*. The Stored Communications Act access to "a wire or electronic communication" without authorization, or while exceeding authorization. Plaintiff's Stored Communications Act claim is not viable for the same reason its CCFA claim is not viable: Plaintiff cannot prove who committed the unauthorized access of Load's computer system, a necessary element for a claim under either statute. Plaintiff's Stored Communications Act claim fails for an additional reason, however. There is no evidence in the record that the person who accessed Load's system made any attempt to access a stored electronic communication. Indeed, Nick Jones testified it was impossible for someone using the administrative function to view LVRC's stored e-mail. (Fact 20.)

13944.001/879231.1                              - 10 -

Defendants have not found cases in the civil context where the identity of an intruder into a computer system was at issue. Identity is almost never at issue in criminal cases either, and there is no guidance to be had from that context.[6] Commentators have, however, provided some explanation of the type of evidence sufficient to identify an intruder into a computer system. "The key in most cases will be recovering the computer used to launch the attack. If the police can find and analyze [the suspect's] home computer, it will likely yield damning evidence. The records kept by most operating systems can allow forensics experts to reconstruct with surprising detail who did what and when." *Digital Evidence and the New Criminal Procedure*. Orin S. Kerr, 105 Columbia L. Rev. 279, 287 (2005). Merely knowing a certain internet account or IP address originating from a particular location was used to gain access to a computer system is insufficient to establish the user's identity. *See id.* at n. 15.

In this case, all plaintiff is able to prove is that someone using the administrative function with Brekka's login and password accessed Load's computer system on November 19, 2004. That access occurred fourteen months after Brekka left LVRC. Brekka did not delete the e-mail in his LVRC account before leaving. Neither LVRC nor Load conducted any investigation to determine where the IP address that accessed Load's computer system originated. Instead, plaintiff obtained an ex parte search order based on Greenstein's affidavit which falsely claimed that Load employees "actually caught Brekka/Quain in the LVRC account." Plaintiff's computer forensics expert copied and examined the three computer hard drives from Brekka and Quain's personal computers. Plaintiff's expert did not uncover any evidence that defendant's personal computers accessed Load's website on November 19, 2004. Plaintiffs have not presented any

---

[6] There appears to be only one criminal case where the defendant challenged the sufficiency of the evidence as to his identity on appeal. *See United States v. Ray,* 428 F.3d 1172, 1174 (8th Cir. 2005). In *Ray*, the court made short work of the defendant's sufficiency challenge. Defendant admitted that he used his computer and logged onto the Internet several times a day, and three of the emails sent to the Victim traced back to the Internet address he was using on the given day and time the extortion emails were sent. Further, an FBI computer forensic expert found three of the emails and other incriminating documents on the hard drive of Ray's computer.

13944.001/879231.1                                    - 11 -

evidence that would establish Brekka or Quain accessed Load's system. The mere fact that **someone** accessed Load's system using Brekka's login and password is not enough evidence for a rational jury to determine that the identity of that someone was Chris Brekka or Caroline Quain.

**B.     The Court's Order Regarding Plaintiff's Financial Records Must Be Enforced, And Plaintiff Must Be Barred From Submitting Its Evidence On Damages.**

LVRC's alleged marketing damages are nothing more than an attempt at an end-run around the stipulation barring it from presenting evidence of its economic losses. Pursuant to the stipulation and order, LVRC may not introduce evidence of its damages. "A stipulation between parties, particularly in the litigation context when approved by the court is a binding contract enforceable on the basis of contract principles." *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,* 447 F.3d 1357, 1365 (11 Cir. 2006). In *Stubbs,* the Eleventh Circuit reversed the district court's *sua sponte* dismissal of the case based on lack of personal jurisdiction because the parties had stipulated that service of process made on the original defendants would be binding on the defendants. *Id.* A stipulation is given preclusive effect where counsel for both parties were involved in negotiating and drafting the stipulation. *See Varga v. Rockwell Intern. Corp.*, 242 F.3d 693, 699 (6th Cir. 2001) (holding that stipulation was binding on both the district court and circuit court where plaintiffs' counsel participated in its drafting and agreed to its substance); *see also Riley v. Walgreen Co.*, 233 F.R.D. 496, 500 (S.D.Tex. 2005) (compelling defendant to answer interrogatories and finding that defendant had waived any objection to the interrogatories where it had stipulated to answer them by a certain date and failed to do so).

Plaintiff's "marketing" and "advertising" losses are merely economic losses recast in different terminology. LVRC clearly stipulated that it could not seek damages based on figures derived from its balance sheets, income statements, Federal Tax records for the years 2002-2005, and/or statement of cash flow. LVRC also agreed that it would be barred from using any such

documents as evidence or as a basis for expert opinions. Plaintiff's damage claims, however, are clearly derived from information based on financial records it refused to produce during discovery.

Dr. Goedde determined that the **effectiveness** of all plaintiff's **non-internet** marketing and advertising was reduced by 50%. That determination must necessarily be based on plaintiff's financial records. In order to determine whether the effectiveness of plaintiff's advertising was compromised by the intrusion into Load's system, it is necessary to compare advertising costs to plaintiff's bottom line throughout the relevant time periods. Similarly, Goedde determined that **all** LVRC's internet marketing and advertising was rendered ineffective due to the intrusion into Load's system.[7] The only way to determine that all internet advertising was rendered totally and completely ineffective is to take LVRC's financial performance into account.

While Goedde could not rely on financial documents to form his opinions about the effectiveness of LVRC's advertising, he did base his findings on conversation with LVRC's officers. Most importantly, however, defendants do not have access to LVRC's financial statements, which is essential if they are to dispute Goedde's claim that the effectiveness of LVRC's advertising was compromised.

Finally, Goedde asserted that a salary of $200,000 dollars for Smith "appears reasonable" based on LVRC's size. Again, this figure must be based on the company's financial position, and defendants would need access to LVRC's financial records to dispute this claim.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted. Alternatively, plaintiff should be precluded from introducing any evidence on the issue of

---

[7] Goedde reduced the percentage of money lost on online internet advertising to 50% for the time period lasting from November 20, 2004 to August 22, 2005 because the unauthorized access to LVRC's information was stopped. Again, Goedde's determination of the effectiveness of the advertising must be related to the bottom line.

13944.001/879231.1                                   - 13 -

1  damages.

2

3  Dated this 31st day of August, 2006              Respectfully submitted,

4                                                  PARSONS BEHLE & LATIMER

5

6
                                                   By: /s/ Norman H. Kirshman
7                                                      Norman H. Kirshman
                                                       Robert L. Rosenthal
8                                                      Shelley L. Lanzkowsky
                                                       411 E. Bonneville, Suite 300
9                                                      Las Vegas, Nevada 89101
                                                       Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13944.001/879231.1                    - 14 -

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2006, I caused the following to be served via the Court's CM/ECF system, a true and correct copy of the foregoing "**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**" to:

Wade B. Gochnour, Esq.
Haney Woloson & Mullins
1117 South Rancho Drive
Las Vegas, Nevada 89102

/s/ Stefan Brutsch
Employee of Parsons Behle & Latimer

13944.001/879231.1

- 15 -