# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHRISTOPHER BREKKA, *et al.*,

    Third-Party Plaintiffs,

v.

STUART P. SMITH, *et al.*,

    Third-Party Defendants.

Case No. 2:05-CV-1026-KJD-GWF

**ORDER**

    Presently before the Court is Third-Party Defendant Smith's Motion for Summary Judgment (#44). Third-Party Plaintiffs filed a response in opposition (#51) to which Smith replied (#55). Also before the Court is Third-Party Defendants Greenstein and Szabo's Motion for Summary Judgment (#68). Third-Party Plaintiffs filed a response in opposition (#74) to which Greenstein and Szabo replied (#78). Third-Party Plaintiffs also filed Objections and Motions to Strike (#57/59) which the Court denies.

I.  Facts

    Defendants Christopher Brekka and Carolyn Quain are husband and wife. In 1999, Brekka established Defendants Employee Business Solutions, Inc. of Florida and in 2004, Employee Business Solutions, Inc. of Nevada ("the EBS companies"). Brekka is the only employee of the EBS companies which provide consulting services to companies including those operating residential

1  treatment centers, including referrals, Internet marketing, drug and alcohol testing policies and
2  related services.
3        Plaintiff LVRC Holdings, LLC ("LVRC") is principally owned by Third-Party Defendant
4  Stuart Smith and is a for-profit residential treatment center for drug addicted persons.  Smith had
5  known Carolyn Quain for approximately twenty years.  Brad Greenstein was the Director of
6  Administration of LVRC.  Frank Szabo was Clinical Director of LVRC.  In April 2003, Brekka was
7  hired by LVRC to conduct marketing programs and interact with LOAD, a company utilized by
8  LVRC to provide e-mail, web site and related services.
9        On June 2, 2003, Nick Jones, LVRC's primary contact at LOAD, established an
10 "administrative function" for Brekka.  The administrative function included a username and
11 password.  The username ("cbrekka@fountainridge.com") and password were delivered to Brekka
12 via Brekka's LVRC e-mail address.  Brekka had use of a computer in his office at LVRC which
13 remained when he was terminated.  Third-party Defendant Brad Greenstein was later assigned that
14 office, and the computer was used by several LVRC employees.
15       At an unknown point, the e-mail from Jones to Brekka containing the username and password
16 for the administrative function was deleted.  However, Brekka claims that he never deleted the e-
17 mail.  LVRC's computer forensics expert recovered the deleted e-mail from the hard drive of
18 Brekka's LVRC computer after it had been deleted.  However, any person who had access to the
19 computer would have been able to view the e-mail.
20       Brekka's employment was terminated in mid-September 2003 when Brekka and Smith could
21 not agree on a contract to cover his employment and purchase of an interest in LVRC.
22       On November 19, 2004, Jones observed someone logged onto LOAD's system using
23 Brekka's username, cbrekka@fountainridge.com.  While the software used by LOAD to track users
24 on its system could identify visitors to the website and clients that were logged on to the website by
25 username, it could not identify the particular person using the administrative function login and
26

1  password.  Jones identified the computer accessing LOAD's system using the
2  cbrekka@fountainridge.com username by the IP address 199.107.156.30.[1]
3      At some between the intrusion and February17, 2005, LVRC provided information to the
4  Federal Bureau of Investigation and an investigation was opened.  On or about February 17, 2005,
5  LVRC was served with a subpoena to testify and provide documents before a federal grand jury on
6  February 28, 2005.
7      On or about July 25, 2005, the FBI closed the investigation stating in a purely internal report
8  that it "could find no evidence to substantiate a Health Insurance Portability and Accountability Act
9  (HIPPA) violation.  Even though computer intrusion occurred, perspective or existing patient
10 information was not accessed.  With regard to computer intrusion, there was no malicious destruction
11 of property, including the rewriting or disabling of software programs."  This report was not
12 disseminated to any of the parties until Third-party Plaintiffs made a request under the Freedom of
13 Information Act during an extended discovery period.
14     On August 18, 2005, Greenstein in an e-mail to Nick Jones wrote: "As you are aware, the FBI
15 opened up a file on a [sic] Brekka's computer intrusion into our system."  On August 22, 2005,
16 LVRC filed the present complaint.  On or about August 23, 2005, Third-Party Defendants Stuart
17 Smith, Brad Greenstein, and Frank Szabo ("Defendants") issued a Memo stating that LVRC had
18 entered into litigation with Third-Party Plaintiffs and that they had been "told that there may be an
19 ongoing Federal criminal investigation[.]"  When the memo was reprinted for discovery purposes, an
20 automatic dating function filled in the date it was printed on June 8, 2006 rather than the date it was
21 issued.
22     On August 18, 2006, Third-Party Plaintiffs filed their First Amended Third-Party Complaint
23 (#50).  The third-party complaint alleges causes of action for slander or defamation and libel against

---

[1] An IP address is an internet address location from which the Internet session is taking place. IP addresses are traceable.  However, the IP address was only tracked to a server in northern California.  No further investigation was done.

3

all three third-party defendants. Defendants have moved for summary judgment alleging that the statements they made were true or privileged and therefore they cannot be civilly liable for slander or libel.

II. Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

4

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

III.  Analysis

In response to the Motions for Summary Judgment, Plaintiffs assert that the June 8, 2006 Memo stating that LVRC had been told there "may be an ongoing Federal criminal investigation" was defamatory *per se*. Further, Plaintiffs assert that a reasonable trier of fact could infer from the August 18, 2005 e-mail from Brad Greenstein that Smith had made oral statements to Jones that were slanderous. Finally, Plaintiffs assert that Smith told Rene Rummel that Defendants were thieves, stole valuable information and were guilty of fraud.

A.  The June 8, 2006 Memo

Defamation is a publication of a false statement of facts. See Pegasus v. Reno Newspapers, Inc., 57 P.3d 82, 87 (Nev. 2002). A statement is not defamatory "if it is absolutely true, or substantially true." Id. at 88. In this case, the June 8th Memo cannot be defamatory, because, at the least, it is substantially true.

First, other than the date on the memo, Third-Party Plaintiffs have presented no evidence to controvert the assertions of Defendants that the memo was issued on or about August 23, 2005, contemporaneously with the filing of this action. Furthermore, the language of the Memo corroborates the assertion that it was issued in conjunction with the filing of this action. Though Third-Party Plaintiffs suggest that the Memo cannot be true, because the date suggests that it was issued nearly a year after the investigation had been closed by the FBI, they have not raised a genuine issue for trial. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented....all inferences arising from the record...must be drawn and indulged in favor of the party opposing summary judgment. In this respect, [a court] must view the evidence in context, not simply in its segmented parts." Ortiz v. Norton, 254 F.3d 889, 893 (10th

Cir. 2001). Here, a rational jury could not find that the Memo was issued in 2006. Looking at the evidence (the date) in context (the language and subject of the memo), as the Court must, the only rational conclusion is that the Memo was issued contemporaneously with the filing of LVRC's civil lawsuit on or about August 23, 2005.

Finally, the Memo is not defamatory, because it was substantially true. The statement "there may be an ongoing Federal criminal investigation" was substantially true. There is no dispute that the FBI did not inform LVRC when it closed the investigation on or about July 25, 2005. Therefore, the Court must grant Defendant's motion for summary judgment on Third-Party Plaintiffs' claim for defamation based on the Memo.

B.  The August 18, 2005 E-mail

Third-Party Plaintiffs failed to file points and authorities in opposition to Defendants' motion for summary judgment for defamation claims based on the August 18, 2005 e-mail. Therefore, in accordance with Local Rule 7-2(d) and good cause being found, the Court grants Defendants' motion on this claim. Furthermore, the Court must grant summary judgment to Defendant Smith on Third-Party Plaintiffs' claim for libel based on the e-mail. While Third-Party Plaintiff asserts that a trier of fact may infer based on Greenstein's e-mail that Smith made oral statements that were untrue, the Court is only required to view all justifiable inferences in a light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. Reading Greenstein's e-mail to infer that Smith made oral statements to Jones is not a justifiable inference. Furthermore, even if made, the statement was true. The undisputed facts show that the FBI did open a file investigating Brekka. Therefore, the Court must grant Smith's motion for summary judgment.

C. Smith's Alleged Statements to Rene Rummel

Brekka also alleges that Rene Rummel, an employee of LVRC told him, "That Mr. Smith made statements that Mr. Brekka and Ms. Quain were thieves." However, Rummel has signed an affidavit denying those statements. Defendants allege that Brekka's testimony regarding what he was told that Smith said is inadmissible hearsay. The Court agrees.

6

Brekka's alleged evidence of slander constitutes hearsay within hearsay ("double hearsay"). While Smith's statement to Rummel may be considered non-hearsay, no exception exists that overcomes the second level of hearsay. Third-Party Plaintiffs' assert that the residual exception, Federal Rule of Evidence 807, applies. However, Plaintiff cannot satisfy element (B) which requires that the statement be more probative than any other evidence which the proponent can procure through reasonable efforts. Since Rummel has not been shown to be unavailable to testify, her testimony would be more probative than Brekka's reiteration of what she was supposedly told by Smith. Therefore, Brekka has failed to adduce admissible evidence that a false and defamatory statement was made about him, and summary judgment must be entered for Defendant Smith on this claim.

### D.  Conclusion

Third-Party Plaintiffs have failed to demonstrate that genuine issues of material fact exist preventing summary judgment. Since Third-Party Plaintiffs have failed to adduce material facts establishing that there is a genuine issue for trial, the Court must grant summary judgment for Defendants.

## IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Third-Party Defendant Smith's Motion for Summary Judgment (#44) is **GRANTED**;

IT IS FURTHER ORDERED that Third-Party Defendants Greenstein and Szabo's Motion for Summary Judgment (#68) is **GRANTED**;

//

//

1   IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Third-Party Defendants and against Third-Party Plaintiffs.

DATED: September 28, 2007.

_____
Kent J. Dawson
United States District Judge